# In the United States Court of Federal Claims

| | |
|---|---|
| ANIS ATTIA,<br><br>                              *Plaintiff,*<br><br>      v.<br><br>THE UNITED STATES,<br><br>                              *Defendant.* | Nos. 20-1801C; 21-1203C<br>(Filed March 27, 2025) |

Anis Attia, West New York, NJ, plaintiff, pro se.

Brittney M. Welch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting Mr. Attia's Motion for Judgment on the Administrative Record on the Federal Tax Gross-Up; Granting the Government's Motions to Dismiss and for Judgment on the Administrative Record on Other Issues; and Remanding the Federal Tax Gross-Up Issue**

**SILFEN,** *Judge.*

    Anis Attia, proceeding without an attorney, has long alleged problems with his pay as a servicemember in the U.S. Army, arguing that he was underpaid for his language skills and for other work he performed. The government has acknowledged errors and adjusted Mr. Attia's pay at least three times, giving him lump sums when it has found a pay discrepancy, including on remand from this court in the two pending (now consolidated) cases. Mr. Attia now alleges that the government owes him compensation to make him whole for extra taxes he has paid because of receiving back pay as a lump sum rather than receiving it gradually over the years that he should have been paid. In other words, he alleges that he sustained a higher federal and state tax burden

1

overall because of receiving lump-sum payments, and he would like a so-called tax gross-up to make up for that additional burden. He also alleges that the government owes him for tax-related penalties he incurred based on his lump-sum back pay and owes him further back pay.

Mr. Attia filed two complaints, addressing some overlapping legal issues but distinct facts. The government moves to dismiss both complaints for lack of subject-matter jurisdiction—arguing that Mr. Attia fails to allege a legal basis to support his tax gross-up claims—and for failure to state a claim—arguing that he has been paid, so his other claims are moot. The government also moves for judgment on the administrative record, and Mr. Attia cross-moves, with both parties raising related issues and arguments. The court determines that Mr. Attia is entitled to a gross-up for federal taxes paid on his lump-sum back-pay payments, but he is not entitled to a gross-up for state taxes, damages for other expenses related to lump-sum payments he received, or any further back pay. Mr. Attia is therefore entitled to judgment on the administrative record on his federal tax gross-up claims. The government is entitled to judgment on the administrative record or to dismissal of the remaining claims. The court will therefore grant in part and deny in part each party's motions and will remand the case for a federal tax gross-up calculation and payment.

**I.     Background**

Mr. Attia served as an infantryman in the U.S. Army between 2001 and 2009. AR337-38.[1] In 2009, Mr. Attia was involuntarily discharged. AR338. Mr. Attia appealed his discharge to the Army Board for Correction of Military Records. In 2012, the board granted Mr. Attia partial relief, voided the discharge, ordered that the Army reinstate Mr. Attia, and awarded him full back pay

---

[1] The administrative record is available at ECF Nos. 50, 50-1, and 50-2 in Case No. 20-1801. Mr. Attia has two pending cases that were recently consolidated, and Case No. 20-1801 is the lead case. Thus, all references to the electronic case filing numbers, unless otherwise noted, refer to filings in Case No. 20-1801.

for the time after he was improperly discharged. *Id*. The Army reinstated Mr. Attia to active duty in 2013. AR339. In 2014, the Defense Finance and Accounting Service (DFAS) calculated the money the Army owed Mr. Attia for his constructive service between 2009 and 2013 and issued him a payment. AR21-22. Mr. Attia served in the Army until 2015, when he was medically retired due to permanent disability. AR334; AR336.

In 2020, Mr. Attia filed a complaint in this court alleging that he was entitled to additional payments for his constructive service between 2009, when he was improperly discharged, and 2013, when he was reinstated. ECF No. 1. He alleged that (1) the back-pay award was incomplete—for example, his housing allowance and cost of living adjustment were not based on the correct location—and (2) the award was improperly reported to the Internal Revenue Service and Social Security Administration as a lump sum of wages received in 2014 rather than as distributed over his four-year constructive service period—which meant that he paid more in taxes than if he had been paid smaller sums each year. *Id.* at 8-9 [¶¶19-22], 13-14 [¶¶32-34], 18-19 [¶¶44-45]. In 2021, the court remanded the case to DFAS to "review and consider Plaintiff's entitlement to additional compensation and issue a comprehensive determination concerning the amounts he is owed." ECF No. 26 at 1. In 2022, following its review, DFAS issued a final decision correcting Mr. Attia's award and giving him approximately $80,000 in relief. *See* ECF No. 37-1. DFAS did not address Mr. Attia's tax-related claims because they were "not claims for military pay and allowances." *Id.* at 6. Mr. Attia amended his complaint, now alleging that DFAS owes him a tax gross-up to make up for the higher taxes he had to pay as a result of receiving a lump sum in 2014. ECF No. 45 at 4-7 [¶¶10-15].

In 2021, Mr. Attia filed a separate complaint in this court alleging that he was entitled to payments from the time of his reinstatement in the Army in 2013 through his medical discharge in

3

2015. Mr. Attia alleged that he should have received foreign language proficiency bonus payments based on his Arabic and French language skills. *See* Case No. 21-1203, ECF No. 1. The court remanded that case to the board, which determined that Mr. Attia was "eligible for [language proficiency] payments." Case No. 21-1203, ECF Nos. 10, 27-1 at 22. Mr. Attia then stated in a joint status report that he believed only his tax-burden-related claims remained unresolved. Case No. 21-1203, ECF No. 28. The court stayed the case until Mr. Attia received payment. Case No. 21-1203, ECF No. 29. But after conducting an audit of its payment corrections, DFAS determined that Mr. Attia owed DFAS a debt for an overpayment for certain language proficiencies. Case No. 21-1203, ECF Nos. 44, 51. The court again stayed the case until Mr. Attia received a corrected 2022 W-2 from DFAS. Case No. 21-1203, ECF No. 52. After receiving the corrected 2022 W-2, Mr. Attia filed an amended complaint alleging that he was entitled to additional language proficiency pay and to a tax gross-up for the language proficiency back pay. *See* Case No. 21-1203, ECF No. 56. DFAS then investigated Mr. Attia's language proficiency underpayment claims, found that his language proficiency payment for French was an underpayment, and gave Mr. Attia additional language proficiency back pay. Case No. 21-1203, ECF Nos. 57, 59; ECF No. 81 at Ex. A.

After both cases returned to the court, the court consolidated Mr. Attia's 2020 and 2021 cases. Given DFAS's corrective action and Mr. Attia's amendments to his complaints, the court determined that the remaining issues in both cases share a related set of facts and common legal questions that justified consolidation. ECF No. 74.

**II.    Discussion**

The government moves to dismiss Mr. Attia's complaints under rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). ECF Nos. 56, 81. The government argues that the court should dismiss Mr. Attia's claims (1) for lack of jurisdiction because he fails to allege

4

a legal basis to support his tax gross-up claims; and (2) for failure to state a claim because he fails to plead any payment entitlement claims after DFAS gave him all the back pay he is owed for his constructive service and language proficiency benefits. ECF No. 81. The government also moves for judgment on the administrative record in Case No. 20-1801 for the same reasons. ECF No. 56. Mr. Attia waives several claims but cross-moves for judgment on the administrative record on his tax gross-up claims. ECF No. 72.

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. *See* 28 U.S.C. § 1491(a)(1); *see also Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994). The Tucker Act gives this court jurisdiction to decide "actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004); *see* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded … upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contracts.").

The Military Pay Act, 37 U.S.C. § 204, which Mr. Attia invokes (ECF No. 45 at 2 [¶3]), is a money-mandating statute within the court's Tucker Act jurisdiction. *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc). The Military Pay Act "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997). The Military Pay Act thus "provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quotation marks omitted). This court's jurisdiction includes requests for back

pay. *Martinez*, 333 F.3d at 1303. The damages available extend to "military back pay and ancillary relief." *Holley*, 124 F.3d at 1466.

On a motion to dismiss for lack of subject-matter jurisdiction under this court's rule 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

On a motion to dismiss for failure to state a claim under this court's rule 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court is not required to accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay*, 295 F.3d at 1257; *Iqbal*, 556 U.S. at 679).

Under this court's rule 52.1, parties may file motions for judgment on the administrative record for the court to assess "whether the administrative body, given all disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013). "RCFC [52.1] requires [this court] … to make factual findings from the record evidence

as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005). The court then determines "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

When reviewing a military pay case, this court reviews the merits of military personnel decisions "under the same standard as any other agency action." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). The court determines whether the decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Id.* The court reviews a legal determination to decide whether it is "not in accordance with the law." *Moberly v. Secretary of Health and Human Services*, 592 F.3d 1315, 1321 (Fed. Cir. 2010) (quotation marks omitted). Whether a tax gross-up is available under the applicable statute is a legal question; the decision whether to provide that gross-up in a particular case is discretionary, based on the facts of the case. *See generally Home Savings of America v. United States*, 399 F.3d 1341, 1346-47, 1356 (Fed. Cir. 2005) (discussing standards of review and later explaining that the "Court of Federal Claims properly adjusted the damages award to reflect tax consequences"); *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 442-43 (holding "that a district court may award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create").

This court has traditionally held the pleadings of a pro se plaintiff to a less stringent standard than those of a litigant represented by counsel. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that pro se complaints "however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers" (marks omitted)). The court has therefore exercised its discretion in this case to examine the pleadings and record "to see if [the pro se] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct. Cl. 456, 468 (1969).

7

      A.      **Mr. Attia is entitled to a federal tax gross-up on his income and language proficiency back pay**

Mr. Attia states that he paid higher income taxes in the years that DFAS paid him lump sums of back pay for wages and language proficiency bonuses. ECF No. 45 at 4-5 [¶¶10-12]; Case No. 21-1203, ECF No. 56 at 5 [¶9]. He argues that the amount he paid in taxes on the lump sum was greater than what he would have paid if he had received the income gradually over the years he should have been paid. ECF No. 45 at 4-5 [¶¶10-12]. He argues that DFAS owes him a tax gross-up amounting to that difference. *Id.* The government argues that there is no precedent in this court or the Federal Circuit for granting tax gross-ups to individuals—only to corporations—and the court lacks jurisdiction to grant that relief. ECF No. 56 at 4-5; ECF No. 81 at 5-7.

Surprisingly, neither party cites, nor could the court find, any cases in this court or in the Federal Circuit that (1) involved the federal government under the Military Pay Act or any other employment-related statute and (2) addressed tax gross-ups for back pay. There have been cases under the Tucker Act in this court and the Federal Circuit that addressed tax gross-ups for damages awards, but those do not address the Military Pay Act in particular or back pay to individuals, and those do not discuss the implications of Congress's waiver of sovereign immunity. There are cases in other circuits in which plaintiffs sued private employers for back pay under other employment-related statutes, but those do not implicate sovereign immunity or the particular text of the Tucker Act or Military Pay Act. There are cases in other circuits involving tax gross-ups for plaintiffs who sued the federal government that involve back pay and address sovereign immunity, but they do not arise under the Tucker Act. And none of the cases address the related issues of state taxes or other penalties. This case thus raises essentially novel issues. The binding cases come from the Federal Circuit, and the court will address those first, followed by the cases from other circuits, in approximate order of relevance and persuasiveness.

The Federal Circuit and this court have considered and granted tax gross-ups to corporations in breach-of-contract cases to ensure that damages effectively compensated the corporations for harm done by the federal government. *See Home Savings of America*, 399 F.3d at 1356 (affirming the Court of Federal Claims' adjustment of damages to reflect a tax gross-up); *Sonoma Apartment Associates v. United States*, 939 F.3d 1293, 1298-1301 (Fed. Cir. 2019) (vacating and remanding where the Court of Federal Claims had ordered a tax gross-up as speculative but confirming the concept of providing a tax gross-up to compensate for increased tax burden in a breach-of-contract case against the government); *Anchor Savings Bank, FSB v. United States*, 121 Fed. Cl. 296, 332 (2015) (determining that a plaintiff corporation's damages are subject to a tax gross-up). In *Home Savings of America*, this court granted the plaintiffs a tax gross-up because the harm from a government breach of contract resulted in the loss of non-taxable money, but the damages awarded would be subject to income tax. 399 F.3d at 1356. The Federal Circuit found no precedential authority related to tax gross-ups and instead "adopt[ed] the rule of other courts that a tax gross-up is appropriate when a taxable award compensates a plaintiff for lost monies that would not have been taxable." *Id.*

Although the Federal Circuit has not discussed the breadth of Congress's waiver of sovereign immunity that allowed it to reach its conclusion, both *Home Savings of America* and *Sonoma* involved breach-of-contract claims arising directly under the Tucker Act, which waives sovereign immunity for those breach-of-contract claims. 399 F.3d at 1344; 939 F.3d at 1295; *see* 28 U.S.C. § 1491(a)(1). The Tucker Act permits awarding "liquidated or unliquidated damages" and aims "[t]o provide an entire remedy and to complete the relief afforded by the judgment" for the harms caused by the federal government's actions. 28 U.S.C. § 1491(a). This court's jurisdiction to provide a remedy under the Military Pay Act also arises under the Tucker Act, and the Military Pay

9

Act provides no other statement of or limit on the damages available. 37 U.S.C. § 204; *see generally Holley*, 124 F.3d at 1465-66. Because the Federal Circuit held that, in the context of the Tucker Act, a tax gross-up is available, that is arguably binding in this specific Tucker Act context. And there is no apparent reason, nor does the government propose one, for providing a tax gross-up for corporations but not individuals, or for finding a waiver of sovereign immunity in the Tucker Act for corporations but not individuals.

The Third Circuit addressed the issue of individual entitlement to a tax gross-up on back pay in *Eshelman* 554 F.3d at 440-43. Although it arises in the context of a suit against a private employer, not the federal government, *Eshelman* is instructive on tax gross-ups for individuals in the employment context. And, in fact, the Federal Circuit cited *Eshelman* approvingly in *Sonoma*, 939 F.3d at 1298, when discussing tax gross-ups in the context of suits against the federal government, making *Eshelman* all the more instructive here.

In *Eshelman*, a jury found that Agere Systems discriminated against Ms. Eshelman in violation of the Americans with Disabilities Act (ADA) and the Pennsylvania Human Relations Act and awarded her back pay and compensatory damages. *Eshelman*, 554 F.3d at 432. After the trial concluded, Ms. Eshelman moved for an additional monetary award to offset the extra taxes she had to pay from receiving a lump-sum payment. The district court granted that motion and awarded her the tax gross-up on her back pay. *Id.* Agere Systems, like the government here, argued that there was no statutory authority or case law that supported granting Ms. Eshelman a tax gross-up. *Id.* at 440. In addressing the issue, the Third Circuit noted that "a chief remedial purpose of employment discrimination statutes such as the ADA is 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)). The court stated that "Congress armed the courts with broad equitable

power to effectuate this 'make whole remedy,'" and that "[d]istrict courts are granted wide discretion to 'locate a just result' regarding the parameters of the relief granted in the circumstances of each case." *Id.* (cleaned up). The court explained that "district courts should … endeavor to restore the employee to the economic status quo that would exist but for the employer's conduct." *Id.* at 440-41 (cleaned up). The Third Circuit therefore held that "a district court may, pursuant to its broad equitable powers granted by the ADA, award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create." *Id.* at 441-42.

Here, Mr. Attia's suit arises under the Military Pay Act and the Tucker Act, not the ADA. The Tucker Act, as discussed, has very little text discussing the remedies available to litigants, and the Military Pay Act has none. 28 U.S.C. § 1491(a) (permitting an award of "liquidated or unliquidated damages" and aiming "[t]o provide an entire remedy and to complete the relief afforded by the judgment"); *see* 36 U.S.C. § 204. The ADA, on the other hand, has an extended discussion of the remedies available. For intentional acts, a court may issue an injunction, order "reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1).

That text, which includes injunctive remedies, back pay, and "any other equitable relief as the court deems appropriate," underlay the Supreme Court's "make whole remedy" and the Third Circuit's interpretation of that remedy to include tax gross-ups in *Eshelman*. The Tucker Act does not elaborate, but it incorporates "broad equitable powers." *Turner Construction Co. v. United*

*States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011) ("[O]nce jurisdiction attaches, the Court of Federal Claims has broad equitable powers to fashion an appropriate remedy."). This court has wide discretion under the Tucker Act to remand certain matters to an agency with any directions the court "may deem proper and just." 28 U.S.C. § 1491(a)(2).

DFAS based its pay decision on 32 C.F.R. § 581.3(h)(2)(ii). *See* ECF No. 37-1 at 1. Under that regulation, "DFAS will settle claims on the basis of the corrected military record. The DFAS will compute the amount due, if any." 32 C.F.R. § 581.3(h)(2)(ii). The statutory authority for that regulation arises from 10 U.S.C. § 1552. The Secretary of the Army "may pay" claimants who make "a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits … if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his … service in the Army." 10 U.S.C. § 1552(c)(1). Although § 1552(c)(1) uses the word "may," it does not give the Secretary discretion not to provide relief. *See McCord v. United States*, 943 F.3d 1354, 1359 (Fed. Cir. 2019) (explaining that, while § 1552(c)(1) itself is not money-mandating, "it becomes money-mandating if a claimant was improperly denied benefits but became entitled to them under other provisions of law"); *Caddington v. United States*, 178 F. Supp. 604, 631-32 (Ct. Cl. 1959) (With respect to the authority provided in § 1552, "[t]he act is remedial in nature. We believe that this imposes on the Secretary the twofold duty to properly evaluate the nature of any error or injustice and, in addition, to take such corrective action as will appropriately and fully erase such error or compensate such injustice."); *see also Hale v. United States*, 107 Fed. Cl. 339, 344-46 (2012) (In the context of a prior military service enlistment bonus, the statute's use of the word "may" for the Secretary's authority to pay a bonus did not make the statute discretionary because, under Supreme Court precedent, "eligible service members who met the statutory requirements for payment of the bonus were entitled to receive it,"

and the statute sets out explicit standards for eligibility and precise amounts to be paid.). Thus, the Secretary should provide back pay that makes the claimant whole. In sum, DFAS is required, by regulation and statute, to make servicemembers like Mr. Attia whole, and this court has the authority to order appropriate relief to effectuate that.

The Seventh, Ninth, and Tenth Circuits—in the context of Title VII of the Civil Rights Act, which incorporates the same remedies provision at issue in *Eshelman* under the ADA—have agreed with the Third Circuit on providing a tax gross-up on back pay in the employment discrimination context. *Sears v. Atchison, Topeka & Santa Fe Railway, Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984); *E.E.O.C. v. Northern Star Hospitality, Inc.*, 777 F.3d 898, 904 (7th Cir. 2015); *Clemens v. Centurylink Inc.*, 874 F.3d 1113, 1116-17 (9th Cir. 2017).

The Eighth Circuit, also under Title VII and the same remedies provision as the ADA, rejected a tax gross-up on back pay against the government. The court explained that "[n]owhere within the statutory framework … has Congress expressly waived sovereign immunity from tax enhancement damages." *Arneson v. Callahan*, 128 F.3d 1243, 1247 (8th Cir. 1997). The Eighth Circuit added that "Congress must expressly and unequivocally waive sovereign immunity before a party can recover a tax enhancement award from the federal government." *Id.*

The D.C. Circuit reviewed a different remedy provision, from the Age Discrimination in Employment Act, which provides that "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c). Under that remedy provision, the court rejected a tax gross-up on back pay against the federal government because of the "lack of support in existing case law for tax gross-ups" in the circuit. *Dashnaw v. Pena*, 12 F.3d 1112, 1116 (D.C. Cir. 1994); *see Fogg v. Gonzales*, 492 F.3d 447, 456 (D.C. Cir. 2007).

Although the Eighth and D.C. Circuits each considered a tax gross-up for back pay in the context of litigation against the federal government, with the accompanying requirement of a waiver of sovereign immunity, this court nevertheless finds the Federal Circuit's decisionmaking more persuasive as applied to this case. That is particularly true because the Federal Circuit's decisions are binding on this court, and the Federal Circuit decided *Home Savings of America* and *Sonoma* under the Tucker Act's waiver of sovereign immunity. The court's conclusion is strengthened by the Federal Circuit's approval of *Eshelman*, a case involving employee back pay.

Furthermore, the Eighth and D.C. Circuits' reasoning is not persuasive here. The D.C. Circuit provided no reasoning, although its opinion elsewhere alluded to sovereign immunity. *Dashnaw*, 12 F.3d at 1113 n.1. The Eighth Circuit did explain that it was relying on the fact that Congress had not expressly and unequivocally waived sovereign immunity in the context of the relevant Title VII statutory scheme. *Callahan*, 128 F.3d at 1247. Here, the Tucker Act gives this court "jurisdiction to render judgment upon any claim against the United States" including those founded upon "the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract." 28 U.S.C. § 1491(a)(1)-(2). "In authorizing [the Court of Federal Claims] to enter judgment against the United States, Congress waived sovereign immunity for those claims that the statute enables the court to entertain." *New York Life Insurance Co. v. United States*, 118 F.3d 1553, 1557 (Fed. Cir. 1997) (quotation marks omitted). This court and the Federal Circuit have awarded tax gross-ups to parties in other cases over which this court has Tucker Act jurisdiction. *See Home Savings of America*, 399 F.3d at 1356; *see also Sonoma*, 939 F.3d at 1298; *Anchor Savings Bank*, 121 Fed. Cl. at 330-31. Tax gross-ups are appropriate in cases over which the court already has Tucker Act jurisdiction, and the court does not require a separate explicit waiver of sovereign immunity.

Under the Tucker Act, if the court finds the "amount … to be due" a plaintiff should include a federal tax gross-up on his back pay, to cover the extra taxes federal he had to pay because of the government's error, the court may remand the case to DFAS with directions to pay him accordingly. 28 U.S.C. § 1491(a)(2); *see* 10 U.S.C. § 1552(c)(1); 32 C.F.R. § 581.3(h)(2)(ii). In this case, DFAS owes Mr. Attia a tax gross-up because he was effectively paid less by having to pay more federal tax than he otherwise would have paid. That gross-up should equal the difference between the federal taxes he paid in the years he received his lump sums and the federal taxes he would have paid had he received the payments over the course of the years the payments were owed.

Mr. Attia's tax gross-up claims are split between his two complaints. He requests a tax gross-up on his income back pay in count two of his amended complaint in Case No. 20-1801. ECF No. 45 at 4-5 [¶¶10-12]. For that count, the government filed a motion both to dismiss and for judgment on the administrative record. ECF No. 56 at 4-6. Mr. Attia filed a cross-motion for judgment on the administrative record. ECF No. 72 at 4-5. Mr. Attia requests a tax gross-up on his language proficiency back pay in count three of his amended complaint in Case No. 21-1203. Case No. 21-1203, ECF No. 56 at 5 [¶9]. The government filed a motion to dismiss that claim. ECF No. 81 at 5-7.

The court agrees with Mr. Attia that he is entitled to judgment on the administrative record on count two of the complaint in Case No. 20-1801. Because one legal issue in count three of the complaint in Case No. 21-1203 is identical to the legal issue in count two of Case No. 20-1801, the court finds that Mr. Attia is entitled to judgment on that issue as well. The court will remand both federal tax gross-up claims to DFAS to calculate Mr. Attia's entitlement to a federal tax gross-up.

15

### B.     Mr. Attia is not entitled to a state tax gross-up, must pay taxes in the year he is paid, and is responsible for paying penalties for any errors on his tax returns

Mr. Attia alleges that, in addition to a federal tax gross-up, DFAS owes him a state tax gross-up on his income and language proficiency back pay. ECF No. 45 at 6-7 [¶¶13-15]; Case No. 21-1203, ECF No. 56 at 5 [¶9]. Mr. Attia also asserts that DFAS should have allocated federal and state tax withholdings related to his language proficiency back pay across 2022 and 2023 and issued corrected W-2 forms to reflect that. Case No. 21-1203, ECF No. 56 at 3-5 [¶¶5-8]. He adds that DFAS's payment errors caused him to make errors on his tax returns, leading to tax penalties and fees. *Id.*; ECF No. 83 at 2-3. The government argues there is no legal basis for requiring DFAS to pay a state tax gross-up or to allocate withholdings across multiple tax years. ECF No. 56 at 6-7; ECF No. 81 at 4.

Damages must be foreseeable to be recoverable; "[d]amages do not extend to remote consequences" of an injury. *Kansas Gas and Electric Co. v. United States*, 685 F.3d 1361, 1366 (Fed. Cir. 2012); *see Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1021 (Fed. Cir. 1996) ("remote and consequential damages are not recoverable in a common-law suit … especially in suits against the United States for the recovery of common-law damages" (cleaned up)); *see also Yankee Atomic Electric Co. v. United States*, 536 F.3d 1268, 1273 (Fed. Cir. 2008) (stating that plaintiffs could only sustain their damages claim if the damages were reasonably foreseeable by the breaching party).

The Internal Revenue Service operates under the purview of the federal government; the federal government can be responsible for federal-tax-related damages because it could have foreseen the federal tax harm that could result from payment issues and lump-sum back pay. But state-tax penalties and damages are more remote and unforeseeable: State taxes differ depending on the state, are filed in state-specific systems, and are generally disconnected from the federal

government's infrastructure. In this case, Mr. Attia paid extra taxes to the federal government due to the lump-sum back pay; to pay him damages, the federal government is effectively giving him back some of the money it received from him. The federal government knows his federal tax burden and can compensate for it. Not so for his state taxes. *See generally Sonoma*, 939 F.3d at 1299-1301 (explaining that the government was not responsible for future federal taxes on a lump-sum award where the future federal taxes were speculative and unpredictable).

Similarly, any fees or penalties Mr. Attia incurred as a result of his mistakes on his tax returns, regardless of the reason, are too remote and unforeseeable to be recoverable as damages. *See Kansas Gas*, 685 F.3d at 1366; *Wells Fargo*, 88 F.3d at 1021; *Yankee Atomic*, 536 F.3d at 1273. Mr. Attia is responsible for paying his taxes in the year he was paid, under IRS rules, and the government is not responsible for breaking with the IRS's practice and allocating withholdings across different years. IRS Publication 957, Reporting Back Pay and Special Wage Payments to the Social Security Administration, 2 (2024), *available at* https://www.irs.gov/pub/irs-prior/p957--2024.pdf.

This court therefore agrees with the government with respect to count three of Mr. Attia's amended complaint in Case No. 20-1801 (ECF No. 45 at 6-7 [¶¶13-15]) and count two and the state tax gross-up portion of count three of Mr. Attia's amended complaint in Case No. 21-1203 (Case No. 21-1203, ECF No. 56 at 3-5 [¶¶5-9]). Those aspects of Mr. Attia's complaints must be dismissed.

### C. Mr. Attia's remaining allegations fail to state a claim for relief

In his complaint, Mr. Attia asserts that DFAS must issue him a corrected 2009 W-2 form, (ECF No. 45 at 3-4 [¶¶7-9]) and attribute the appropriate Social Security allocations to his corrected earnings (ECF No. 45 at 7-8 [¶¶16-18]). The government argues that both of those issues are moot. The government argues (1) that DFAS has already issued Mr. Attia a corrected W-2

17

form for 2009; and (2) that DFAS has already submitted the relevant forms to the Social Security Administration to reallocate Mr. Attia's earnings appropriately. ECF No. 56 at 3-4, 6-7. The government adds that Mr. Attia has since agreed to dismiss both claims. *Id.*; *see* ECF No. 56 at Ex. A, Ex. B. In response, Mr. Attia notes that he does not oppose the government's mootness arguments for those claims. ECF. No 72 at 2-3. The court thus agrees with the government and will dismiss as moot counts one and four of Mr. Attia's amended complaint in Case No. 20-1801 (ECF No. 45 at 3-4 [¶¶7-9], 7-8 [¶¶16-18]).

Mr. Attia also alleges in one amended complaint that he never received the full language proficiency payment to which he is entitled. Case No. 21-1203, ECF No. 56 at 2-3 [¶¶3-4]. The government states that, since Mr. Attia filed his amended complaint, DFAS has paid him all the additional language proficiency pay he was owed. ECF No. 81 at 3. Mr. Attia does not respond to this point, forfeiting any argument about it. ECF No. 83 at 2 (arguing instead that the payments he received were not based on any deception or fraud); *see In re Google Technology Holdings LLC*, 980 F.3d 858, 862-64 (Fed. Cir. 2020). Because Mr. Attia does not dispute that DFAS paid Mr. Attia, that claim is moot. *See* ECF No. 81 at Ex. A (affidavit of a DFAS financial management specialist). The court thus agrees with the government and will dismiss count one of Mr. Attia's amended complaint in Case No. 21-1203 (Case No. 21-1203, ECF No. 56 at 2-3 [¶¶3-4]).

Mr. Attia alleges that DFAS must pay missing tax withholdings for 2014 to the IRS or correct its 2014 record to the IRS. ECF No. 45 at 8 [¶19]); ECF No. 72 at 3. He alleges that DFAS's erroneous records have resulted in his having to pay penalties and that he has an ongoing case in tax court to address the issue. *Id.* The government argues that Mr. Attia failed to identify a money-mandating statute that would allow for the relief Mr. Attia seeks. ECF No. 56 at 8-9. Mr. Attia responds that he does not oppose dismissal of his claim without prejudice because he may soon

get relief in his related pending tax case. ECF No. 72 at 3-4. It is unclear whether Mr. Attia's IRS-related issues may lead to a separate tax claim within this court's jurisdiction. Given the uncertainty over this claim, the court agrees with Mr. Attia and will dismiss without prejudice count five of Mr. Attia's amended complaint in Case No. 20-1801 (ECF No. 45 at 8 [¶19]).

**III.    Conclusion**

For the reasons stated above, this court

1. **Grants** Mr. Attia's motion for judgment on the administrative record and **denies** the government's motion to dismiss and motion for judgment on the administrative record as to count two of Mr. Attia's amended complaint in Case No. 20-1801 (ECF No. 45 at 4-5 [¶¶10-12]); **denies** the government's motion to dismiss as to the federal tax gross-up portion of count three of Mr. Attia's amended complaint in Case No. 21-1203 (Case No. 21-1203, ECF No. 56 at 5 [¶9]); **remands** the federal tax gross-up issue to DFAS until June 27, 2025, on or before which DFAS shall calculate how much Mr. Attia is owed in a federal tax gross-up on his income and language proficiency back pay;

2. **Grants** the government's motion to dismiss and motion for judgment on the administrative record as to count three of Mr. Attia's amended complaint in Case No. 20-1801 (ECF No. 45 at 6-7 [¶¶13-15]); **grants** the government's motion to dismiss as to count two and the state tax gross-up portion of count three of Mr. Attia's amended complaint in Case No. 21-1203 (Case No. 21-1203, ECF No. 56 at 3-5 [¶¶5-9]); **dismisses** those counts on the state tax gross-up and Mr. Attia's errors on his tax returns;

3. **Grants** the government's motion to dismiss and motion for judgment on the administrative record as to counts one and four of Mr. Attia's amended complaint in Case No. 20-1801 (ECF No. 45 at 3-4 [¶¶7-9], 7-8 [¶¶16-18]) on correcting forms; **dismisses** those counts as moot;

4. **Grants** the government's motion to dismiss as to count one of Mr. Attia's amended complaint in Case No. 21-1203 (Case No. 21-1203, ECF No. 56 at 2-3 [¶¶3-4]) on the full language proficiency payment; **dismisses** that count as moot;

5. **Grants in part** the government's motion to dismiss and motion for judgment on the administrative record as to count five of Mr. Attia's amended complaint in Case No. 20-1801 (ECF No. 45 at 8 [¶19]) on penalties caused by DFAS's erroneous records; and **dismisses that count without prejudice**.

The government shall file a status report by May 12, 2025, informing the court of the status of DFAS's calculations and any payment to Mr. Attia. The case is stayed until June 27, 2025. The

parties shall file a joint status report by July 11, 2025, informing the court of the status of DFAS's calculations and any payment to Mr. Attia and proposing any next steps in this case.

    **IT IS SO ORDERED.**

                                                               s/ Molly R. Silfen
                                                                MOLLY R. SILFEN
                                                                Judge